1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

DOUGLAS M. SHULTES, JR.,

9

Plaintiff,

10

v.

11

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

12

Defendant.

13

NO.  C13-1448-RSL-JPD

REPORT AND
RECOMMENDATION

14

Plaintiff Douglas M. Shultes, Jr. appeals the final decision of the Commissioner of the

15

Social Security Administration ("Commissioner") which denied his applications for Disability

16

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI

17

of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an

18

administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that

19

the Commissioner's decision be REVERSED and REMANDED.

20

I.        FACTS AND PROCEDURAL HISTORY

21

Plaintiff is a 50 year old man with a GED.  Administrative Record ("AR") at 17, 185.

22

His past work experience includes employment as a building maintenance worker.  AR at 17.

23

Plaintiff was last gainfully employed in December 2006.  AR at 10, 182.

24

REPORT AND RECOMMENDATION - 1

1    On May 27, 2009, plaintiff filed a claim for SSI payments.  On June 2, 2009, he filed

2    an application for DIB, alleging an onset date of December 1, 1996.  AR at 8, 146, 149.

3    Plaintiff asserts that he is disabled due to bipolar disorder, manic depression, attention deficit

4    disorder, and hyperactivity.  AR at 11, 181.

5    The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 8,

6    81-87, 92-102.  Plaintiff requested a hearing which took place on October 18, 2011.  AR at 43-

7    75.  On January 27, 2012, the ALJ issued a decision finding plaintiff not disabled and denied

8    benefits based on his finding that plaintiff could perform a specific job existing in significant

9    numbers in the national economy.  AR at 5-23.  Plaintiff's administrative appeal of the ALJ's

10   decision was denied by the Appeals Council, AR at 1-4, making the ALJ's ruling the "final

11   decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On August 14,

12   2013, plaintiff timely filed the present action challenging the Commissioner's decision.  Dkts.

13   1-3.

14                          II.      JURISDICTION

15   Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

16   405(g) and 1383(c)(3).

17                        III.      STANDARD OF REVIEW

18   Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

19   social security benefits when the ALJ's findings are based on legal error or not supported by

20   substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

21   Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is

22   such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

23   *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

24   (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in

REPORT AND RECOMMENDATION - 2

medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).  The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.     EVALUATING DISABILITY

As the claimant, Mr. Shultes bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the

1   national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-

2   99 (9th Cir. 1999).

3        The Commissioner has established a five step sequential evaluation process for

4   determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§

5   404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At

6   step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at

7   any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step

8   one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R.

9   §§ 404.1520(b), 416.920(b).[1]  If he is, disability benefits are denied.  If he is not, the

10  Commissioner proceeds to step two.  At step two, the claimant must establish that he has one

11  or more medically severe impairments, or combination of impairments, that limit his physical

12  or mental ability to do basic work activities.  If the claimant does not have such impairments,

13  he is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe

14  impairment, the Commissioner moves to step three to determine whether the impairment meets

15  or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d),

16  416.920(d).  A claimant whose impairment meets or equals one of the listings for the required

17  twelve-month duration requirement is disabled.  *Id.*

18       When the claimant's impairment neither meets nor equals one of the impairments listed

19  in the regulations, the Commissioner must proceed to step four and evaluate the claimant's

20  residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the

21  Commissioner evaluates the physical and mental demands of the claimant's past relevant work

22

23       [1] Substantial gainful activity is work activity that is both substantial, i.e., involves
    significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. §
24  404.1572.

REPORT AND RECOMMENDATION - 4

to determine whether he can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.    DECISION BELOW

On January 27, 2012, the ALJ issued a decision finding the following:

1.    The claimant meets the insured status requirements of the Social Security Act through September 30, 2001.

2.    The claimant engaged in substantial gainful activity during the following periods: October 2006 to December 2006.

3.    However, there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity.  The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.

3.    The claimant has the following severe impairments: mood disorder not otherwise specified with a strong rule out for drug addiction and alcoholism-related mood changes, antisocial personality features, and polysubstance abuse/dependence.

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is limited to simple, routine, and repetitive tasks and occupations that require no greater than a reasoning level of two.  He also cannot have interaction with the public as part of work duties and no greater than occasional interaction with co-workers as part of work duties.

6.    The claimant is unable to perform any past relevant work.

REPORT AND RECOMMENDATION - 5

7.    The claimant was born on XXXXX, 1964 and was 32 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.[2]

8.    The claimant has at least a high school education and is able to communicate in English.

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.   The claimant has not been under a disability, as defined in the Social Security Act, from December 1, 1996, through the date of this decision.

AR at 10-18.

## VI.    ISSUES ON APPEAL

The principal issues on appeal are:

1.    Whether the ALJ erred in assessing plaintiff's credibility?

2.    Whether the ALJ erred in evaluating the medical evidence?

3.    Whether the ALJ erred in evaluating the statements of other sources?

4.    Whether the ALJ erred in making the RFC determination?

Dkt. 17 at 1; Dkt. 19 at 2.

## VII.    DISCUSSION

A.    <u>Plaintiff Cannot Amend His Alleged Onset Date Before the District Court</u>

As a threshold matter, the Court addresses plaintiff's attempt to amend his alleged onset date.  In plaintiff's opening brief, he attempts to amend his disability onset date to May 27, 2009, from the original December 1, 1996 date in his applications for social security benefits.

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

*See* Dkt. 17 at 2; AR at 8, 146, 149.  The Court declines to entertain plaintiff's request.  This Court's review is limited to the administrative record before the Commissioner.  *See* 42 U.S.C. § 405(g); *see also Harman v. Apfel*, 211 F.3d 1172, 1177 (9th Cir. 2000) ("As in other administrative law contexts, judicial review in cases under the Social Security Act is limited to a review of the administrative record for a determination of whether the Commissioner's decision is supported by substantial evidence in the record.").  Because the record was based on an alleged onset date of December 1, 1996, and was developed using that date, and no arguments were made before the ALJ or the Appeals Council to change that date, the Court will use the original December 1, 1996 date as the alleged onset date.

      B.    <u>The ALJ Erred in Assessing the Medical Evidence</u>

      Plaintiff argues that the ALJ should have given more weight to the examining source opinions, and erred in selectively citing and mischaracterizing the record to support his findings. Dkt. 17 at 3-12.

      *1.    Standards for Reviewing Medical Evidence*

      As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual."  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751.  If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988).  "This can be done by setting out a detailed and thorough

REPORT AND RECOMMENDATION - 7

summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751).  The ALJ must do more than merely state his/her conclusions.  "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).  Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence.  *Id.*  An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors.  *Lester*, 81 F.3d at 831.  However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them.  In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it.  SSR 96-6p, 1996 WL 374180, at *2.  Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record.  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

2.    *Discussion*

Plaintiff seemingly takes issue with the entirety of the ALJ's assessment of the medical evidence.  The Court agrees that the ALJ made errors with respect to his analysis of the medical evidence.

a.    Dr. Sandvik

Dr. David Sandvik examined plaintiff on August 19, 2009 and diagnosed plaintiff with dysthymia and noted that plaintiff has a cluster of personality features, primarily antisocial and avoidance, and these features were marked.  AR at 286.  Dr. Sandvik found that while plaintiff could do calculations accurately and could make correct change in several problems put to him, his memory testing was poor and his capacity to focus was inconsistent.  *Id*.  Moreover, he indicated that plaintiff was markedly deficient in his capacity for social interaction and he only rarely made eye contact.  *Id*.

In discussing Dr. Sandvik's opinion, the ALJ stated:

A consultative examiner, Dr. Sandvik, gave the claimant a GAF score of 60, indicating moderate symptoms (Exhibit 4F/3).  Dr. Sandvik also opined that the claimant had poor interpersonal skills [that] would present difficulties in terms of performing work activities through a normal workday (Exhibit 4F/3).  I find the GAF score persuasive because it is consistent with the record as a whole and accordingly give it some weight (*See e.g.*, exhibit 14F/15).  I accord the opinion as to the claimant's ability to work little weight, however, as it is not consistent with the overall record, particularly the reports indicating that the claimant regularly participated in church activities and visited his neighbor three to four times per week (Exhibit 14F/32).

AR at 15-16.  The ALJ erred in discounting Dr. Sandvik's opinion regarding claimant's ability to work based on plaintiff's daily activities.  Plaintiff's daily activities are not inconsistent with the overall record and with his claimed impairments.

With respect to the plaintiff's daily activities, the ALJ found:

The record, particularly reports of the claimant's activities, raises other significant credibility concerns regarding the degree of severity alleged.  For

example, despite allegations of social difficulties, the claimant visited a neighbor three to four times per week and helped him with household repairs (Exhibit14F/32). The claimant indicated that his mood had improved as a result, explaining that "I feel pretty good being able to help; this is what neighbors are supposed to do" (Exhibit 14F/32). The claimant also regularly attended church, explaining, "it gives me a sense of belonging" (Exhibit 14F/32). Moreover, he volunteered to take photographs for the congregation's website (Exhibit 14F/32). Reports indicating that the claimant visited with friends in person, on the phone, and through e-mails also demonstrate that the claimant's social difficulties are not as severe as alleged (Exhibit 6E/5).

Other reported activities are also inconsistent with the alleged symptoms. Despite his complaint of memory difficulties, the claimant testified at the hearing that he lived with and took care of his grandmother. He managed her medications and made sure that she took her medications according to schedule (per hearing testimony). He also helped his grandmother with other activities, including helping her walk to the bathroom and get into and out of bed (per hearing testimony). Moreover, the claimant helped his mother with housework and cooking, watched television, read, and played computer games (Exhibits 12F/8 and 6E/1). Such evidence does not support the degree of memory difficulty alleged by the claimant.

AR at 14.

Plaintiff has repeatedly indicated that he has social and memory problems that prevent him from working. *See* AR at 55. Nothing in the plaintiff's daily activities undermines this claim. The activities cited by the ALJ show nothing more than plaintiff trying to lead a normal life. *See Reddick*, 157 F.3d at 722 ("disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."). Moreover, it is unclear how these daily activities transfer to a work setting. *See Orn*, 495 F.3d at 639 (to use daily activities to undermine a claimant's credibility the daily activities must "meet the threshold for transferable work skills."). In addition, some of plaintiff's activities, particularly activities such as helping out his neighbors, are consistent with plaintiff's description of his manic phases as described to Dr. Margaret Cunningham in which he stated that he feels "constantly on the go," and which occur two to three days a week per month. *See* AR at 249.

b.    Dr. Schummel

Dr. Schummel, Ph.D, examined plaintiff on January 13, 2010 and diagnosed plaintiff with depressive disorder NOS and personality disorder with dependent and self-defeating features.  AR at 314.  In his report, Dr. Schummel observed plaintiff to have depressed mood and noted that plaintiff had marked to severe limitations with regards to his ability to understand, remember and follow complex (more than two step) instructions; learn new tasks; exercise judgment and make decisions; relate appropriately to co-workers and supervisors; respond appropriately to and tolerate the pressures and expectations of a normal work setting; and care for himself.  AR at 315.

The ALJ gave Dr. Schummel's opinion "no weight."  AR at 16.  The ALJ stated:

> An examining psychologist, Don Schummel, Ph. D, gave the claimant a GAF score of 50 and opined that the claimant had serious impairments in mood, behavior, social, and occupational functioning (Exhibit 8F/4).  Dr. Schummel also opined that although the claimant was to engage in simple activities such as collecting scrap metal and temporary day labor, he was unable to complete an eight-hour workday or a forty-hour workweek (Exhibit 8F/7).  I have carefully considered the opinion and assign it no weight because it is not consistent with the overall record, particularly the multiple examination findings showing mostly intact cognitive functioning and reported daily activities showing less impaired social functioning (*See e.g.*, exhibits 14F/15 and 14F/32).  Dr. Schummel's opinion is also given no weight because it is almost entirely based on claimant's self-reports, which, as discussed above, are not entirely credible.

AR at 16.  The ALJ erred in discounting Dr. Schummel's opinion.

As discussed above, nothing indicates that plaintiff's daily activities are inconsistent with the overall record and with plaintiff's allegations regarding his impairments.  Moreover, as will be discussed below, the reasons the ALJ gave for discounting plaintiff's credibility were not clear and convincing.  Finally, despite the ALJ's assertions, the majority of the examining and treating doctors indicated that plaintiff had severe cognitive disabilities.  In addition to Dr. Shummel's adverse findings regarding plaintiff's mental impairment, Dr.

1   Cunningham noted marked to severe limitations in areas of his abilities to: understand,

2   remember, and follow complex instructions; exercise judgment and make decisions; perform

3   routine tasks; relate appropriately to co-workers and supervisors; interact appropriately in

4   public contacts; respond appropriately to and tolerate the pressure and expectations of a normal

5   work setting; and to control physical or motor movements and maintain appropriate behavior.

6   AR at 246-47.

7         Dr. Sandvik found that while plaintiff could do calculations accurately and he could

8   make correct change, in several problems put to him, his memory testing was poor and his

9   capacity to focus was inconsistent.  AR at 286.

10        Dr. Enid Griffin, Psy.D, who examined plaintiff on January 17, 2011, diagnosed

11  plaintiff with bipolar disorder with severe psychotic features. AR at 341.  Dr. Griffin found

12  plaintiff to have marked limitations in perceptual or thinking disturbances and marked

13  limitations due to labile, shallow, or coarse affect.  AR at 340.  Dr. Griffin also found marked

14  limitations in the ability to perform routine tasks without undue supervision, be aware of

15  normal hazards and take appropriate precautions, communicate and perform effectively in a

16  work setting with public contact, and maintain appropriate behavior in a work setting.  AR at

17  342.

18        Thus, the majority of doctors who examined plaintiff found severe mental and

19  cognitive limitations.  Where the majority of examining and treating physicians indicate that a

20  plaintiff has marked limitations, their opinions should be afforded more weight.  *See Delegans*

21  *v. Colvin*, No. 13-35184, slip op. at 3-4 (9th Cir. Jul. 29, 2014).

22              c.    Dr. Cunningham

23        Dr. Cunningham examined plaintiff on January 29, 2009 and diagnosed him with

24  bipolar disorder with psychotic features, and noted the limitations set forth above.  AR at 246.

REPORT AND RECOMMENDATION - 12

1    The ALJ gave Dr. Cunningham's opinion "little weight."  AR at 16.  The ALJ stated:

2        Margaret Cunningham, Ph.D., examined the claimant for DSHS and opined that
         the claimant had severe limitations in cognitive and social factors (Exhibit
3        2F/3).  Dr. Cunningham further opined that the claimant would be unable to
         maintain employment until his bipolar disorder was addressed (Exhibit 2F/6).
4        After careful consideration, I accord the opinion little weight because it is
         inconsistent with the record as a whole.  In particular, Dr. Cunningham's
5        assessment is based on the assumption that the claimant has bipolar disorder,
         whereas the record does not demonstrate a diagnosis of the disorder.  In fact, a
6        treating clinician ruled out bipolar disorder following her examination of the
         claimant (Exhibit 3F/2).

7    *Id*.  The ALJ erred in dismissing Dr. Cunningham's opinion.

8        The ALJ's statement that Dr. Cunningham's opinion is wrong because it is "based on

9    the assumption that the claimant has bipolar disorder" has no merit.  First, Dr. Cunningham

10   actually diagnosed plaintiff with bipolar disorder.  *See* AR at 246.  Being a doctor, Dr.

11   Cunningham had the authority to diagnose plaintiff with this disorder.  In addition, there is no

12   evidence that the diagnosis was based on anything other than Dr. Cunningham's examination

13   of plaintiff.  Therefore, finding error with the fact Dr. Cunningham based her opinion on the

14   "assumption" that plaintiff had bipolar disorder was erroneous, as Dr. Cunningham herself

15   made the diagnosis.  Additionally, the ALJ's statement that the "record does not demonstrate a

16   diagnosis of the disorder" is wrong.  In addition to Dr. Cunningham, Dr. Griffin diagnosed

17   plaintiff with bipolar disorder.  *See* AR at 341.  Thus, more than one medical source diagnosed

18   plaintiff with bipolar disorder.

19        C.    The ALJ Erred in Assessing Plaintiff's Credibility

20        Plaintiff argues that the ALJ erred in assessing his credibility.  Specifically, plaintiff

21   argues the ALJ erred by: (1) discrediting plaintiff's testimony as to the severity of symptoms

22   solely because they are unsupported by objective medical evidence, and (2) engaging in

23   selective review of the record to discredit plaintiff's credibility.

24

1

### 1.  Standards for Evaluating Credibility

Credibility determinations are within the province of the ALJ's responsibilities, and will not be disturbed, unless they are not supported by substantial evidence.  A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen v. Chater*, 80 F.3d 1273,1281 (9th Cir. 1996); SSR 96-7p.  First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms.  20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p.  Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence.  *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick*, 157 F.3d at 722.  Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.  The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains.  *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

2.       *Discussion*

The reasons the ALJ gave to discredit plaintiff were not clear and convincing.  The ALJ's reasons for discounting plaintiff's credibility included findings that: (1) the medical evidence did not support the degree of severity alleged, (2) plaintiff's daily activities were inconsistent with the plaintiff's complaints, (3) plaintiff's lack of consistent treatment raised concerns about the degree of severity of plaintiff's impairments, and (4) there was evidence that plaintiff was not forthcoming with his treatment providers regarding his use of alcohol and drugs.  AR at 13-15.

a.       Daily Activities

The ALJ's findings with regards to plaintiff's daily activities are discussed above and will not be repeated.  As discussed above, the record does not support the finding that the plaintiff's daily activities are inconsistent with his claimed impairments.  It suffices to say that merely going to church, talking to some friends, or helping a family member are not clear and convincing reasons to discredit plaintiff's credibility when the claimant claims he is disabled due to the mental impairments at issue.

b.       Inconsistent Treatment

The ALJ also found:

> The claimant's lack of consistent treatment raises further credibility concerns about the degree of severity alleged.  Although the claimant complained of mental health symptoms, the record shows that he was discharged by his treatment provider after he failed to appear at multiple appointments and individual counseling sessions (Exhibit 14F/1).  Further, the record shows that the claimant did not treat his mental health symptoms with medication (*See e.g.*, exhibit 23F/13).  Although the claimant may have reasons for not seeking treatment, such evidence tends to cast doubt on the severity of symptoms alleged.

AR at 14.  Plaintiff appears to have had valid reasons for the inconsistent treatment that were not discussed by the ALJ.  First, the record indicates that the plaintiff is homeless

REPORT AND RECOMMENDATION - 15

1   and has been in a state of homelessness for the past 10 years.  AR at 51-52, 276.  As a

2   result of his homelessness, plaintiff has constantly been forced to move about and has

3   lived in "Tent City," where he lives in an open field in a tent.  *Id.*  Furthermore,

4   plaintiff has acknowledged that he often misses appointments because he's homeless

5   and does not have the conveniences of having an alarm or watches.  AR at 312 ("I'm

6   homeless without an alarm so I miss appointments").

7          As stated in SSR 96-7p:

8          . . . the adjudicator must not draw any inferences about an individual's
           symptoms and their functional effects from a failure to seek or pursue regular
9          medical treatment without first considering any explanations that the individual
           may provide, or other information in the case record, that may explain
10         infrequent or irregular medical visits or failure to seek medical treatment . . . .

11  SSR 96-7p goes on to state "[t]he explanations provided by the individual may provide insight

12  into the individual's credibility.  For example . . . . The individual may be unable to afford

13  treatment and may not have access to free or low-cost medical services."  *Id.*  The ALJ did not

14  consider these circumstances in reaching his decision.

15         Moreover, the fact that plaintiff did not treat his mental health symptoms with

16  medication, by itself, is not a clear and convincing reason to discredit plaintiff in this case.

17  Plaintiff claimed adverse side effects from the medications, were the reasons he stopped taking

18  them, yet these were not discussed by the ALJ.  For example, while discrediting plaintiff for

19  not taking medications, the ALJ failed to mention that plaintiff tried taking Lamictal to treat his

20  mood disorder but stopped taking it because the medication was causing him to hear voices.

21  AR at 14, 382, 391.  Not taking prescription medication because the side effects are less

22  tolerable than the symptoms may be a valid reason for not taking such medications.  *See* SSR

23  96-7p.

24

REPORT AND RECOMMENDATION - 16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

c.      Alcohol and Drugs

With regards to plaintiff's use of alcohol and drugs, the ALJ stated:

> Other discrepancies raise additional credibility concerns, including evidence indicating that the claimant was evasive and not forthcoming with his treatment providers.  For example, the record demonstrates that the clamant has a history of alcohol, marijuana, methamphetamines, and cocaine use (Exhibit 12F/7).  In fact, the claimant reported that he still used marijuana and consumed alcohol "a couple of times a year" (Exhibit 12F/7).  Yet, during the course of a consultative examination with Dr. Sandvik, the claimant was not forthcoming and reported that he did not consume alcohol that his last use of marijuana occurred fifteen years ago (Exhibit 4F/1).  Similarly, during the course of an evaluation while incarcerated by the Department of Corrections, the claimant denied any alcohol or drug problems (Exhibit 9F/8).  In another example of inconsistent statements, the claimant reported to one examining psychologist that his last use of methamphetamines occurred in the 1990s, but reported to another examining psychologist that his last use was in 2006 (Exhibits 12F/7 and 2F/17).

AR at 14-15.  A review of these statements, however, does not indicate that they are

necessarily inconsistent with one another, or that they were made by the plaintiff in an effort to

deceive the ALJ or his treating physicians.  While it's true that plaintiff told Dr. Sandvik he did

not consume alcohol and that his last use of marijuana was fifteen years ago, these statements

were made in 2009. AR at 284.  Plaintiff has since indicated consistently that he uses

marijuana and alcohol "a couple of times a year." *See e.g.*, AR at 57-58, 344.  It is possible

that plaintiff restarted using marijuana again sometime after he saw Dr. Sandvik.  Furthermore,

a review of the record indicates plaintiff has never tried to be evasive about his past drug and

alcohol use and has readily admitted such use to both the ALJ and treating physicians.  *See*

*e.g.*, AR at 57-58, 262, 276, 284, 344.  Finally, there is nothing inconsistent about plaintiff's

denial of any alcohol and drug problems to the Department of Corrections.  Almost all of the

treating and examining physicians that have seen plaintiff also indicate that they do not believe

he suffers from any alcohol or drug problems.  *See* AR at 246 (indicating no substance abuse

problems), 262 (indicating that while plaintiff has used alcohol and drugs there is no indication

of abuse), 279 (indicating no evidence of substance abuse), 314 (indicating no substance abuse problems), 341 (indicating no substance abuse problems). Thus, the reasons the ALJ gave for discrediting plaintiff based on his statements regarding drug and alcohol use were not clear and convincing. If the ALJ believed alcohol or drug use was the reason plaintiff was unable to work, he should have conducted a DAA analysis.[3]

### d.   Objective Medical Evidence

Because the Court has determined that the other reasons given by the ALJ to discredit plaintiff were not clear and convincing, and the only remaining reason for discrediting plaintiff was based on the ALJ's argument that the objective medical evidence does not support the degree of severity alleged, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell*, 947 F.2d at 343; *Reddick*, 157 F.3d at 722. Moreover, as indicated above, the ALJ erred in his assessment of the medical evidence. As a result, the ALJ's findings must be reversed.

### D.   The ALJ Erred in Assessing the Statements of Other Sources

#### 1.   Standards for Reviewing Statements from Other Sources

In order to determine whether a claimant is disabled, an ALJ may consider lay-witness sources, such as testimony by nurse practitioners, physicians' assistants, and counselors, as

---

[3] Pursuant to the Contract with America Advancement Act, an "individual shall not be considered to be disabled for purposes of Title II and Title XVI benefits if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." Pub. L. No. 104-121, 110 Stat. 847 (March 19, 1996) (codified at 42 U.S.C. 423(d)(2)(C), 1382c((a)(3)(J)). Before applying this statute, however, an ALJ must first conduct the five-step sequential-evaluation process and conclude that the claimant is disabled. *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). If a claimant is found to be disabled and there is medical evidence of plaintiff's DAA use, then the ALJ must apply the sequential-evaluation process a second time to determine whether plaintiff would still be disabled if he or she stopped using drugs and alcohol. *Id.* It is error for an ALJ to conclude that DAA precludes an award of benefits prior to applying the five-step process first. *Id.*

REPORT AND RECOMMENDATION - 18

well as "non-medical" sources, such as spouses, parents, siblings, and friends.  *See* 20 C.F.R. §

404.1513(d).  Such testimony regarding a claimant's symptoms or how an impairment affects

his/her ability to work is competent evidence, and cannot be disregarded without comment.

*Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).  This is particularly true for such non-

acceptable medical sources as nurses and medical assistants.  *See* SSR 06-03p (noting that

because such persons "have increasingly assumed a greater percentage of the treatment and

evaluation functions previously handled primarily by physicians and psychologists," their

opinions "should be evaluated on key issues such as impairment severity and functional

effects, along with the other relevant evidence in the file.").  If an ALJ chooses to discount

testimony of a lay witness, he must provide "reasons that are germane to each witness," and

may not simply categorically discredit the testimony.  *Dodrill*, 12 F.3d at 919.

### 2. Discussion

The ALJ considered the statements of a clinical worker Nanci Johnson, L.I.C.S.W.,

M.H.P, and counselor Glenda Jasso-Porter, M.A., M.H.C.  The ALJ gave both of their opinions

"little weight" because their assessments were "based almost entirely on the claimant's self-

reports."  AR at 16-17.  The ALJ erred in giving these opinions "little weight."  As discussed

above, the reasons the ALJ gave for discounting plaintiff's credibility were not clear and

convincing.  As a result, the ALJ erred by dismissing the statements of Ms. Johnson and Ms.

Jasso-Porter on the ground that they were based on plaintiff's statements and on plaintiff's

credibility.

### E. Remand for Further Proceedings

The plaintiff asks this Court to enter a judgment reversing the ALJ's decision and

award plaintiff social security benefits.  Dkt. 22.  A remand for award of benefits is not

appropriate in this case.  The record requires further development.  Here, there is a dispute as

REPORT AND RECOMMENDATION - 19

1    to the plaintiff's alleged onset date.  The ALJ needs to clarify this matter.  In light of the errors

2    above with respect to plaintiff's credibility findings and the errors in the assessment of the

3    medical evidence, the ALJ should conduct a de novo hearing on all issues.

4                                              VIII.    CONCLUSION

5           For the foregoing reasons, the Court recommends that this case be REVERSED and

6    REMANDED to the Commissioner for further proceedings not inconsistent with the Court's

7    instructions.  A proposed order accompanies this Report and Recommendation.

8           Objections to this Report and Recommendation, if any, should be filed with the Clerk

9    and served upon all parties to this suit by no later than **September 12, 2014**.  Failure to file

10   objections within the specified time may affect your right to appeal.  Objections should be

11   noted for consideration on the District Judge's motion calendar for the third Friday after they

12   are filed.  Responses to objections may be filed within **fourteen (14)** days after service of

13   objections.  If no timely objections are filed, the matter will be ready for consideration by the

14   District Judge on **September 19, 2014**.

15          DATED this 29th day of August, 29, 2014.

16

17   _____

18   JAMES P. DONOHUE
     United States Magistrate Judge

19

20

21

22

23

24

REPORT AND RECOMMENDATION - 20